IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JAYSON K. BROCKHOUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 12-3292 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiff Jayson K. Brockhouse filed applications for Disability Insurance Benefits under Title II and Supplemental Security Income benefits under Title XVI of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), the Plaintiff seeks judicial review of an unfavorable decision.

Pending before the Court are the Plaintiff's Motion for Summary Reversal and the Defendant's Motion for Summary Affirmance.

Plaintiff's Motion is denied.

Commissioner's Motion is allowed.

# I. BACKGROUND

Jayson K. Brockhouse filed his applications on April 1, 2009, alleging an onset date of July 29, 2008. The Plaintiff was almost 39 years old at the time of his alleged onset date. Prior to July of 2008, the Plaintiff worked as a construction worker.

## A. Hearing testimony

The Plaintiff testified he has an Associate's Degree as a distribution lineman, but needs help reading because he is dyslexic. He testified he has experienced constant headache pain since being hit on the head at work. The Plaintiff has never received care from a mental health professional and denied feeling depressed.

The Plaintiff, who is from Winchester, Illinois, testified that his activities are limited. He stated that he drove to Peoria two weeks earlier to attend a state championship basketball game, though he had to go home prior to one of the games that he wanted to see.

The Plaintiff testified that lifting a gallon of milk would cause him to experience a shooting pain down his arm and back. Although he is able to lift his arms over his head, the Plaintiff stated such a maneuver would cause him pain.

The vocational expert, Dennis Gustafson, noted that Plaintiff had two past relevant jobs, both of which were performed at a heavy exertional level. The ALJ posed a hypothetical to the vocational expert regarding a person of the Plaintiff's age, education and work experience who could lift 20 pounds occasionally and 10 pounds frequently, but could not climb ladders, ropes and scaffolds. The person could occasionally climb ramps and stairs and could engage in overhead reaching occasionally. He would have to avoid concentrated exposure to extreme cold, noise and vibration.

The vocational expert testified such a person could not perform either of the Plaintiff's past jobs. However, the individual could perform unskilled light jobs which include 14,210 jobs in Illinois as a housekeeper/cleaner, 44,800 jobs as a cashier (falling under the classification of cashier II), and 18,000 jobs in Illinois as a production worker (hand assembly). An example

3

of such a job would be as a mold sheet cleaner. The vocational expert testified the person could also work in hand packaging. He identified 21,130 jobs in Illinois as a bottling line attendant.

The vocational expert testified this information was consistent with that contained in government publications, including *Dictionary of Occupational Titles*.

### B. Medical evidence

On June 4, 2008, the Plaintiff saw his primary care physician, Marshall Hale, M.D., complaining of neck pain. The Plaintiff was treated at Heartland Chiropractic from September of 2007 through October of 2008 for neck pain. An examination on October 23, 2008 revealed a positive foraminal compression test bilaterally and a positive hyperextension compression test.

On June 15, 2009, the Plaintiff saw Joseph Kozma, M.D., for a consultative examination. Dr. Kozma observed that Plaintiff had been healthy until suffering an injury, a blow on his head with a hard hat. Dr. Kozma described a person with good grip strength and finger dexterity, who

4

could use his hands for fine manipulations. Although the Plaintiff stated his fingers tingled at times, Dr. Kozma did not observe that during the examination. The Plaintiff was able to walk without difficulty. He reported difficulty mowing his lawn with a push mower. Although he had some discomfort turning his head, the Plaintiff did not have permanent joint abnormalities. Dr. Kozma found no evidence of a hearing problem. Moreover, Dr. Kozma found that Plaintiff's daily activities were affected "very little" by his injury. Dr. Kozma's diagnoses included (1) posttraumatic condition of the cervical spine; (2) decreased range of motion of the cervical spine; (3) slight decrease range of motion of both shoulders; (4) slight memory loss; (5) hearing difficulty that is intermittent; and (6) hypertension, under treatment, controlled.

On June 4, 2009, an x-ray revealed mild degenerative changes at the C6-C7 disc space level and no recent or destructive pathology. A June 8, 2009 MRI revealed broad-based disc bulges causing probable clinically significant lateral recess narrowing and cord signal changes at C5-C6 and C6-C7.

On June 16, 2009, the Plaintiff saw Stephen Pineda, M.D., who noted the incident in which a co-worker struck the Plaintiff on the head and broke his hard hat.  Dr. Pineda reviewed the MRI that showed fairly significant disc disease that was most notable at C5-6 and C6-7.  The MRI showed osteophyte and disc present in the strictures.  Dr. Pineda explained that this caused narrowing of the spine and would subsequently leave the spinal cord with limited space.  Dr. Pineda also observed some spinal cord compression.  The Plaintiff had a questionable Hoffman sign of the hands.  Dr. Pineda was unable to elicit a triceps reflex.  Dr. Pineda advised the Plaintiff to avoid risks of falls, as well as ladders or climbing or other activities that could put him at risk.  He recommended a course of therapy and exercise.    On November 5, 2009, the Plaintiff saw David T. Volarich, D.O., for an independent medical examination.  Dr. Volarich found mild asymmetry in bulk in the upper and lower extremities.  Strength in the right upper extremity was diffusely weak measuring 4.5/5.  The left upper extremity was diffusely weak measuring 3/5.  In the lower extremities, the left calf was weak to dorsiflexion and plantar flexion measuring 4/5.  Examination also

revealed diminished pin prick sensation throughout both the upper and lower extremities, as well as the torso.  The Plaintiff's gait was noted as walking with a limp, favoring the left.  The Plaintiff was unable to toe walk due to left leg weakness.  He could only stand on the right foot for four seconds and on the left foot for two seconds before losing balance.  The Plaintiff was able to squat half of normal before stopping because of leg weakness.  Cervical range of motion was reduced in all directions.  Additionally, the Plaintiff's extension, left rotation and left lateral flexion were reduced more than 80%.

On December 16, 2009, the Plaintiff was examined by Vittal V. Chapa, M.D., S.C., at the request of the agency.  Dr. Chapa noted a decreased range of motion of the cervical spine.  He noted that Plaintiff has a history of headaches which are related to his neck pain.

On January 20, 2010, the Plaintiff saw James T. Doll, D.O., for an independent medical examination.  Dr. Doll noted that Plaintiff worked for approximately two months after his head injury.  The Plaintiff reported minimal daily activities due to his symptoms.  He would occasionally

perform household chores and yard work for brief periods of time.

Dr. Doll found that the May 30, 2008 work incident did not cause the Plaintiff's multilevel degenerative condition of the cervical spine, chronic neck pain and, limited motion or other symptoms. That condition was preexisting is naturally progressive and degenerative over time.

On February 5, 2010, a physical residual functional capacity (RFC) was performed by James Madison, M.D. Dr. Madison opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk 6 hours in an 8 hour workday and sit about 6 hours total. He had limited the Plaintiff to occasional postural maneuvers but never ladders, ropes, or scaffolds. Reaching in all directions was limited to occasionally bilaterally because it could exacerbate neck pain. The RFC indicated that Plaintiff should avoid concentrated exposure to extreme cold, noise and vibration.

An October 18, 2010 MRI of the cervical spine revealed a moderate right central/posterior lateral disc protrusion along with an uncovertebral osteophyte mildly flattening the ventral right aspect of the spinal cord and

8

severe right neural foraminal stenosis at C5–6. At C6–7 there is a moderate sized central disc protrusion superimposed on a diffuse disc bulge with uncovertebral hypertrophy causing moderate to severe flattening of the spinal cord and severe left neural foraminal stenosis.

On October 15, 2010, the Plaintiff was seen by Koteswara Narla, M.D., for pain management. He complained of neck pain with tingling and numbness in his hands and knees. The impression was cervical pain and also burning sensation in hands. Dr. Narla was surprised that Plaintiff had not been taking pain medications. Although he believed that the Plaintiff's loss of sensation was likely nonphysiological, Dr. Narla prescribed Neurontin. Dr. Narla was reluctant to proceed with any steroid injections.

On January 13, 2011, Dr. Narla administered an epidural steroid injection at C6–7.

On April 30, 2011, at the request of the administrative law judge ("ALJ"), Kenneth L. Cloninger, M.D., filled out a form entitled Medical Source Statement of Ability To Do Work-Related Activities. Dr. Cloninger found that Plaintiff could occasionally lift up to twenty pounds and

9

frequently lift up to ten pounds. He could sit for four hours at a time and for six hours in an eight-hour day, stand for one hour at a time and for two hours in an eight-hour day and walk for one hour at a time and for two hours during an eight-hour day. The Plaintiff could reach overhead occasionally, and reach in other directions frequently. He could perform handling, fingering and feeling occasionally and pushing/pulling frequently. Dr. Cloninger prohibited the climbing of ladders and scaffolds but found that other postural activities, including climbing stairs and ramps, could be performed occasionally. Dr. Cloninger also prohibited any working at unprotected heights. The Plaintiff was limited to only occasional exposure to moving mechanical parts, operating a motor vehicle, extreme cold and heat. Dr. Cloninger identified mild to cognitive dysfunction. He found that Plaintiff had positive bilateral Hoffman's signs, decreased Babinski and positive Lhermitts sign. Dr. Cloninger noted the MRI showed spinal cord compression.

### C. ALJ's decision

On August 22, 2011, ALJ Gerard J. Rickert issued a decision, finding

that Plaintiff has not been under disability since July 29, 2008.

The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of July 28, 2008. At step two, the ALJ identified a closed head injury and recurrent headaches as severe impairments. At step three, the ALJ determined that Plaintiff's impairments, whether considered individually or in combination, did not meet or equal the requirements of any listed impairment. The ALJ observed that Plaintiff's closed head injury did not meet Listing 11.18, finding that it had not resulted in cerebral trauma. Moreover, no listing existed that specifically addressed headaches.

The ALJ also found that Plaintiff retained the RFC to perform a limited range of light work that precluded him from climbing ladders, ropes or scaffolds. He could only occasionally climb ramps and stairs and could engage in overhead reaching on an occasional basis and he must avoid concentrated exposure to cold, noise and vibrations. The ALJ cited what he found to be inconsistencies which led to an adverse credibility finding. At step four, the ALJ found that Plaintiff could not perform any of his past

11

jobs. At step five, the ALJ relied on vocational expert testimony, in conjunction with the medical-vocational guidelines, to find that Plaintiff was not disabled because he could perform a significant number of light jobs as a housekeeper, cashier II, production worker, mold sheet cleaner, and hand packager and bottle line attendant.

## II. DISCUSSION

### A. Standard of review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Pursuant to section 205(g) of the Social Security Act, the ALJ's decision must be upheld if it is supported by substantial evidence. *See Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). "Substantial evidence" includes "such relevant evidence as a reasonable mind accepts as adequate to support a conclusion." *Id.* (citations omitted). The ALJ's decision must include a "logical bridge from the evidence to the conclusions sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the Plaintiff] meaningful judicial

12

review." *Id.* This Court may not substitute its judgment for that of the ALJ "by reconsidering facts, reweighing evidence, resolving conflicts in evidence or deciding questions of credibility." *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999) (citation omitted).

B. Plaintiff's limitations due to headaches

The Plaintiff first alleges that the ALJ violated Social Security Ruling ("SSR") 96-8p by not considering the effect of the Plaintiff's headaches on his ability to work, despite finding them to be a severe impairment. The decision concluded that Plaintiff could perform light work as noted above.

An RFC assessment determines the most work that a person can perform regularly despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. An RFC assessment must be "based on all of the relevant evidence in the case record," including medical source statements. *See* SSR 96-8p. SSR 96-8p instructs ALJ's to consider a claimant's work-related abilities on a function-by-function basis, despite any limitations. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The RFC determination should logically connect the evidence to the ALJ's conclusion. *See Jones v.*

13

*Astrue*, 623 F.3d1155, 1160 (7th Cir. 2010). The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p.

The Plaintiff contends the ALJ's decision failed to identify any limitations caused by the Plaintiff's headaches. Moreover, it does not discuss the severity, frequency, duration or intensity of the headaches or how the headaches affect the Plaintiff. The Plaintiff further asserts that the ALJ does not explain how the exposure to cold, noise and vibration affects the Plaintiff's headaches, even though the decision restricts the Plaintiff from such exposure.

As the Commissioner alleges, there is no record evidence that any of the doctors who evaluated the Plaintiff found any limitations due to headaches. Although Dr. Kozma observed that Plaintiff had frequent headaches, he did not note any limitations as a result. Dr. Volarich did not find that Plaintiff was disabled due to headaches. Dr. Chapa also noted a history of headaches but did not list any limitations. Although the Plaintiff reported frequent headaches to Dr. Doll, Dr. Doll did not identify

14

headaches among his diagnoses. Dr. Cloninger's evaluation included a detailed discussion of the Plaintiff's medical issues but also did not mention headaches.

The Court concludes that Plaintiff has not demonstrated that he has limitations due to headaches. The ALJ did not commit error by failing to articulate limitations that no doctor found. Accordingly, the ALJ's decision on this issue is supported by substantial evidence.

C. ALJ's RFC assessment

The Plaintiff also asserts the ALJ's RFC assessment was conclusory and fails to contain rationale or reference to the supporting evidence and is thus not supported by substantial evidence. He claims the ALJ did not account for Dr. Volarich's restrictions or Dr. Doll's report.

In stating that "the record does not demonstrate clearly that he has the significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, difficulty ambulating, or reflex abnormalities which are associated with intense and disabling pain," *see* R. at 23, the Plaintiff contends the ALJ is ignoring objective medical findings

which include weakness in upper and lower extremities, decreased pin prick sensation in the extremities, decreased range of motion in the cervical spine, positive Hoffman's sign, decreased grip strength and a positive MRI showing increased T2 signal changes and positive cord compression in the cervical spine.

The Plaintiff contends that the decision ignores these medical findings, in addition to those of Dr. Cloninger, and generally cites the alleged lack of objective medical findings and resulting limitations. The ALJ does not specify precisely what this evidence is or explain why most of Dr. Cloninger's objective conclusions are rejected.

As the Commissioner alleges, however, there is significant agreement as to certain restrictions. The ALJ found that Plaintiff could lift up to 20 pounds occasionally and ten pounds frequently, which is consistent with Dr. Cloninger's opinion.

Light work is also defined as sitting for two hours in an eight-hour work day and standing/walking for the other six working hours. *See* 20 C.F.R. § 404.1567(b). Dr. Cloninger found that Plaintiff was capable of

16

standing/walking for a total of four hours in an eight-hour day instead of six, as found by the ALJ. Dr. Cloninger found that Plaintiff could sit for six hours in an eight-hour day. As the Commissioner alleges, the ALJ's assessment as to sitting and standing/walking is only slightly different from that of Dr. Cloninger and it is supported by the opinion of Dr. Kozma, who stated that Plaintiff was able to walk without difficulty.

Based on the foregoing, there is evidence supporting the ALJ's assessment as the Plaintiff's ability to lift, sit, stand/walk. To that extent, therefore, the Court finds the ALJ's RFC assessment is supported by substantial evidence.

There is other evidence in the record which supports the ALJ's findings. Although Dr. Doll found a positive Hoffman's sign in the Plaintiff's hands which could indicate problems with the spinal cord and the loss of grip strength, Dr. Kozma found that Plaintiff had good finger dexterity and grip strength. Dr. Pineda recommended only that Plaintiff avoid falls, a limitation with which Dr. Doll agreed. The ALJ accounted for this limitation by prohibiting the Plaintiff from climbing ladders, ropes and

scaffolds and noting he could only occasionally climb ramps and stairs.

Although Dr. Volarich recommended that Plaintiff should change positions frequently to maximize comfort and rest when he needed, this recommendation is not included in the ALJ's RFC finding. Even if this restriction were imposed, however, the Court has no basis to find that any of the six unskilled, light jobs identified by the vocational expert would be eliminated.

For all of these reasons, the Court finds that the ALJ's determination is supported by substantial evidence.

Ergo, the Plaintiff's Motion for Summary Reversal [d/e 12] is DENIED.

The Defendant's Motion for Summary Affirmance [d/e 15] is ALLOWED.

The Clerk will enter a Judgment affirming the Commissioner's decision and terminating this case.

ENTER: March 3, 2016

    FOR THE COURT:

                 <u>s/Richard Mills</u>
                 Richard Mills
                 United States District Judge